Your honors, members of the court, I think the petition should be upheld because D.U. is not applicable. It oversimplifies Navas' rules. Navas took a very detailed view of all the facts and it is only where there is no logical issue. I think it misstates Navas if you read it carefully. Navas puts Navas' limitation as such, especially because we are in asylum. Discretion is very important because all the factual issues should be taken into account. There should be a mix. The motives can be mixed in terms of prosecutorial and persecution. Where the mixed motive is especially analogous is Bhandari where the initial arrest to enforce a neutral law did not affect attack on protected grounds. The asylum applicant only needs to present evidence that the harm was in part motivated by the actual implied protected ground. In this case, the implied political opinion being he gave food and clothing to North Korean refugees. In no way, there is no evidence that he actually helped them cross the border or was involved in alien smuggling. They were actually in People's Republic of China proper. There is no evidence that he assisted in helping them cross the border or that he was involved in human trafficking. It was more a humanitarian effort, a good Samaritan type case and I think that is where the factual analysis lies. So would the theory then be that this is an imputed political opinion? That would be one of the five grounds under the Refugee Act that we would have to find the persecution was directed to? It seems the policy of China is to signatories the 1951 UN Convention on Refugees. However, in the 2006 State Department report, which is not in the record, but since 2003 doesn't address refugees. China does not live up to its obligations under the convention because it treats all North Korean refugees as economic refugees and forcibly deports them. It doesn't even allow them to apply for asylum. I just wanted to make clear here because unlike the case that we just heard argued where the claim was based in part on grounds of religion, in this case it is purely on resistance to whatever the Chinese policy is towards the North Koreans. That's correct. It was based on his assistance to North Korean refugees. He felt sorry for these North Koreans. I think he had some affinity based on the fact that he had some North Korean, he was Chinese but he was of North Korean descent. He felt sorry for these North Korean refugees who were hiding in some factory and they were hungry and cold so he bought them clothes and food. We have three of these claims today and each one of them involves a Chinese, a native and citizen of China, of North Korean ethnicity assisting a North Korean refugee. That's correct. And you're arguing it's because there's a government policy that there's an imputed political opinion that it's wrong to leave them out there to die, basically, and not give them humanitarian aid. That's the government of China's position. Correct. Could there also be a ground, I don't know if you raised it in this case, of persecution based on their ethnicity? There could be, Your Honor. Race or ethnicity? I was struck by the fact that each of these three cases, there were North Korean ethnicity involved. I don't think that was fully developed in the record, Your Honor, but Jilin province is bordering North Korea so there seems to be a lot of affinity and ties between North Korea and that part of northern China. And I think in the record the petitioner was motivated by the fact that he is ethnically North Korean, I mean ethnically Korean, but he's a Chinese citizen and he felt sorry for these people living in the factory or hiding in the factory. But it wasn't, I believe in my review of the record, that wasn't the racial aspect or the ethnicity wasn't addressed in the record or developed by counsel. Okay. And also I think the rulers should be more applicable to seeing because prosecutorial motivation may have more than one motive. And also if you look at what's in the record, the State Department report, China does suffer from many arbitrary arrests and without charges, without criminal process. Therefore, just I think the government's argument that it's a purely criminal prosecution and does arise persecution is not applicable. Also, I think Xiaoguang is not applicable here. As the government argues in this case. Counsel, can I ask you a question about that? How is that different from the fact that we prosecute people who harbor people who come across the border from Mexico? That's a crime in this country, is it not? Well, Your Honor, it can be. But I think they're going more to the nexus of the actual crossing of the border rather than purely humanitarian aid. Well, I guess maybe you're answering my question. That's what distinguishes it is the humanitarian aspect of it. Because without anything other than the fact that he encountered these people in a warehouse and they were obviously cold and hungry and he provided them with food and clothes and shelter. That kind of conduct, if it were engaged in here, would be a crime if the person knew that these people had just illegally crossed into the United States, wouldn't it? I think if I may take the analogy, I think maybe where we're going is maybe he didn't have the mental state that they crossed illegally or what their actual status in the country was, maybe he... But I thought his testimony was that they were in such poor condition that it was pretty obvious that they were desperately in need of help. I mean, I didn't see anything in the record that suggested that they'd been in China for some length of time. And as you point out, the province borders on North Korea. That's correct. But I think where the prosecution lies, and I think in this country as well, I think they try to find a nexus to the actual... Well, you have to know that the person is here illegally, do you not? That's the mental element under U.S. immigration. Knowing the knowledge of illegal, and also that I think that they actively... They actually helped them cross the border, helped them actually, rather than just humanitarian assistance, which can be neutral. And I don't think he assisted in them violating the laws of China. It's not clear whether providing food and clothing is illegal in China without him assisting the traffickers or the trafficking activity. I think that's the distinction they lie. And to address the government's argument in Xiaoguang, they would say that this detention does not arise to the level of persecution because it wasn't severe enough. I respectfully disagree because the petitioner went to the hospital for a month and he was bleeding. Torture is complex and it comes in various forms. The reasonable person test should be used. In this case, it was kicking, pulling hair, slaps, bloody lips, and pulling on the ears. Therefore, the factual issue should be for the fact finders. But it's not factually similar to Prasad or Xiaoguang due to severity. He did spend a month in the hospital. We understand your position. We'll give you a moment on rebuttal if you want to use it. Thank you. We'll hear from the government. Good morning. May it please the Court, an honorary simoneon on behalf of the Attorney General, Michael Mukasey. Petitioner has failed to demonstrate that the record compels a finding that he's eligible for asylum, withholding remover, or protection under convention against torture. Would you speak a little more slowly? Yes, I'm sorry. Thank you. I'd just like to start by saying that opposing counsel cited to a State Department report not in the record and that not be considered by the Court today since that is extra record evidence. To continue. Actually, can't we take judicial notice of State Department reports? Of current events. Well, no, it's a government document, document of a government agency. You may take judicial. I'm just pointing out that it was extra record evidence and not in the record today. We can accept it. We can look at it. We can take judicial notice of it. Yes, Your Honor. Okay. I'd like to start off by pointing out that the immigration judge was correct in finding that Petitioner was never persecuted on two grounds. First, it was not on account of his imputed political opinion. The Chinese police were trying to investigate a crime of considering where the whereabouts of these refugees were. I believe that Your Honor today pointed out that smuggling is a crime in China. However, harboring wasn't definitively found to be a crime, that there's a policy. But the police were trying to investigate where these refugees were. They asked Petitioner continuously where are the refugees on the record in page 125. He testified that he was continuously questioned about the Koreans' whereabouts on 98. And there's no other record evidence that they were concerned about his political opinion, what he thought about the North Korean refugees, why he was helping them, et cetera. But that's not what the I.J. held. What the I.J. said was that he violated a law of China, and that's why he was punished. That's what the I.J. ruled. I believe the I.J. ruled that he didn't present any record evidence saying that harboring refugees was not a crime. Well, that's a whole other issue, because if the government is going to say that he committed a crime, and I point to what crime, and my law clerks have researched all of Chinese criminal laws, there's no such crime, giving aid to, I mean, it isn't a crime. There's a crime, Article 318, whoever organizes people to secretly cross the national boundary. And then it goes, it lists seven possible elements. But none of them are giving food and clothing to anyone. Correct, Your Honor. I agree with you in those terms. What I'm saying is that the police had to figure out where these refugees were, and then to investigate to find who the smugglers are, and that's what they were trying to do. Right, but we're reviewing what the I.J. held. The I.J. didn't talk about investigation. Where in the I.J.'s ruling did it talk about how the police were merely investigating the potential commitment of a crime? Well, he said they had a pretext for finding that he was harboring refugees because he was buying food and clothing for five refugees and secured temporary employment and housing for them. And so, the second point the I.J. also did make, that these events didn't amount to persecution. The public counsel didn't point out that he actually went to the hospital because he was beaten by cellmates and not by the police, that the most severe beating was by his cellmates and not by the police themselves. And he says that's what the I.J. found. Yes, the I.J. did find that. And did the I.J. make any finding on whether the jailers stopped the beating? There was no testimony towards that, so there was no finding of that. He didn't say that the jailers didn't help me or I was beaten because no one heard me scream out or et cetera. So there was no finding found on that. What he did say was that the police officers did pull his ear, that he was forced to kneel down, they kicked his feet, and then he was jailed for one week. But then he also says that he was beaten by fellow cellmates on the record, page 99. Finally, I'd just like to close. Are there any further questions? Okay, that petitioner has waived both withholding of removal and the issue of CAT in his brief by not failing to brief the issue. He does not even state them in the standard of review. And I'd just like to submit. Thank you. Thank you. Mr. Olano, do you have anything to add? No. Very briefly, please. Yes. As to the record, it is not clear in the record whether his injuries were a result of what his cellmates did or what the police did. There's no – the nexus was so close that we don't know what severity the police used to force those injuries. I would go to, like, the month of – the indicator of the severity would be the month in the hospital. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Fung v. MacCasey.
judges: Schroeder, Wardlaw, Tallman